UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| MICHAEL BANKS, | ) |
|     Plaintiff, | ) Civil Action No. _____ |
| v. | ) JURY TRIAL DEMANDED |
| VIRGINIA BEACH POLICE DEPARTMENT, | ) |
| CHIEF PAUL NEUDIGATE<br>    In His Official Capacity, | ) |
| OFFICER ANDREW HOUSTON,<br>    In His Official Capacity | ) |
| SERGEANT JESSICA COLE,<br>    In Her Official Capacity | ) |
| DEPUTY CHIEF SEAN ADAMS,<br>    In His Official Capacity | ) |
| DEPUTY CHIEF SHANNON WICHTENDAHL<br>    In His Official Capacity, | ) |
| CAPTAIN MICHAEL CLARK,<br>    In His Official Capacity, and | ) |
| LIEUTENANT ALICIA JONES<br>    In Her Official Capacity, | ) |
|     Defendants. | ) |

## COMPLAINT

**COMES NOW**, Plaintiff, by and through his counsel, pursuant to the Federal Rules of Civil Procedure, for his causes of action against the Defendant and alleges as follows:

## I. INTRODUCTION

1. Plaintiff brings this suit for race discrimination (hostile working environment) and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.

2. At all times relevant to this Complaint, Plaintiff is within the protected class of Title VII of the Civil Rights Act of 1964, as amended.

3. Plaintiff alleges that he was subjected to a racially hostile work environment after he engaged in several protected activities related to personal and shared discriminatory practices in the Virginia Beach Police Department recruit training process by department leadership between June 24, 2021, and July 14, 2021.

4. As a result of Plaintiff engaging in these protected activities, he was retaliated against through a series of departmental actions including transferring him from the Internal Affairs Bureau (IAB) to the Second Precinct; stripping him of his ability to conduct FIP training and polygraph examinations; denying his access to headquarters; having his IAB key taken; subjecting him to an unnecessary, six-month internal investigation without communication of its status; notifying him of the actual charges 10 months after the start of the investigation; referring him to the Virginia Beach Commonwealth Attorney's office for a Brady Disclosure; denying him promotional opportunities; and demoting him 14 months after the start of the investigation without proper notice of his due process rights.

## II. PARTIES

5. Plaintiff is a Black male resident of Chesapeake, Virginia, and a citizen of the United States. At all times relevant to this suit, Plaintiff has been employed by the Virginia Beach Police Department.

6. Defendant, Virginia Beach Police Department, is located at 2509 Princess Anne Road, Virginia Beach, Virginia 23456.

7. Defendant, Police Chief Paul Neudigate, Department Director, works within the department in Virginia Beach, Virginia.

8. Defendant, Officer Andrew Houston, Third Precinct Police Training Officer, works within the department in Virginia Beach, Virginia.

9. Defendant, Sergeant Jessica Cole, Third Precinct Police Training Supervisor, works within the department in Virginia Beach, Virginia.

10. Defendant, Deputy Chief Sean Adams, Operations Division, works within the department in Virginia Beach, Virginia.

11. Defendant, Deputy Chief Shannon Wichtendahl, Administrative & Investigative Divisions, works within the department in Virginia Beach, Virginia.

12. Defendant, Captain Michael Clark, Commanding Officer – Internal Affairs & Training, works within the department in Virginia Beach, Virginia.

13. Defendant, Lieutenant Alicia Jones, Internal Affairs, works within the department in Virginia Beach, Virginia.

## III. JURISDICTION AND VENUE

14. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

15. Venue is proper in this judicial district because the actions giving rise to this claim occurred in Virginia pursuant to 42 U.S.C. §2000e-5(f)(3).

## IV. FACTS

16. On or about February 3, 1997, Plaintiff started his career with the Virginia Beach Police Department as a Police Officer Recruit.

17. Plaintiff successfully completed the police training academy and became a Police Officer on June 16, 1997, assigned to the Third Precinct.

18. Plaintiff thereafter passed the Master Police Officer exam and was promoted to Master Police Officer (MPO) on or about February 16, 2003.

19. Plaintiff was later promoted to Sergeant on or about December 20, 2016.

20. After this last promotion, Plaintiff transferred from the Third Precinct and was assigned to the Internal Affairs Bureau (IAB) at headquarters on January 28, 2021.

21. As a part of the IAB, Plaintiff underwent specialized training on his role and responsibilities as an investigator.

22. Plaintiff was responsible for receiving and investigating complaints against Virginia Beach police officers.

23. At the time of these incidents, Plaintiff had conducted himself with the utmost integrity and professionalism and had an exemplary, unblemished work record.

24. On or about June 30, 2021, A Black lieutenant approached Plaintiff about speaking with a Probationary Police Officer (PPO) Pairrys Ransom, a black female, who had concerns that she was not receiving the same training support as her white peers.

25. Plaintiff had been known to be both an informal mentor to minority recruits and an anti-discrimination advocate within the department due to his own personal experiences with race discrimination over the years.

26. In fact, the Virginia Beach Police Department had recognized and approved of Plaintiff's advocacy by sanctioning several forums with Black police officers in an effort to discuss and resolve race-based, intra-departmental issues.

27. Therefore, Plaintiff agreed to speak with PPO Ransom to hear her concerns and offer guidance on how to best address her concerns.

28. PPO Ransom told Plaintiff about the challenges she was experiencing in her field training with Officer Andrew Houston (black), her training officer at the Third Precinct.

29. On June 24, 2021, Plaintiff reached out to Sergeant Jessica Cole (white), Third Precinct Training Supervisor, to discuss PPO Ransom's concerns of racial discrimination in the training process. This was a protected activity.

30. Sgt. Cole cut this conversation short.

31. On June 28, 2021, Plaintiff attempted to have the same conversation with Sgt. Cole and she again Plaintiff's call short. This was another protected activity.

32. On the morning of June 29, 2021, PPO Ransom met with Sgt. Cole to address her concerns that she was not being treated fairly at the Third Precinct and that she believed that she was facing the same race-based discrimination that had permeated her training experience at the Fourth Precinct.

33. Sgt. Cole did nothing to address PPO Ransom's concerns.

34. Sgt. Cole apparently tipped Training Officer Andrew Houston off that Plaintiff may call him to share PPO Ransom's concerns.

35. On or about June 30, 2021, Plaintiff informally reached out to Training Officer Houston to relay PPO Ransom's concerns.

36. This was Plaintiff's third protected activity in an effort to address perceived racial bias in the training process.

37. At the start of the conversation, Plaintiff made it clear to Officer Houston that he was not contacting him in any official capacity, but to share that PPO Ransom had a perception that she was not being treated fairly in the training process and how to avoid the perception and perpetuation of any racial bias.

38. At no point in that conversation did Officer Houston indicate that he was insulted or uncomfortable with what Plaintiff shared on PPO Ransom's behalf.

39. Plaintiff was also aware that June 30, 2021, was the last day that PPO Ransom would be training with Officer Houston but hoped that the conversation would bring awareness and greater sensitivity around training concerns for the future.

40. Unbeknownst to Plaintiff, Training Officer Houston filed a complaint against Plaintiff alleging that Plaintiff had abused his authority in contacting him about PPO Ransom and that he (Houston) felt coerced to pass PPO Ransom in the training process.

41. Officer Andrew Houston was allegedly persuaded by Sergeant Donald Dozier, Third Precinct Supervisor, to file the complaint against Plaintiff. Sgt. Dozier is allegedly on the Virginia Beach Commonwealth Attorney's Brady Disclosure List for making disparaging comments about the black community on social media.

42. Plaintiff could not have influenced PPO Ransom's training outcome on the last day of her training nor did he make such a request in his June 30th conversation with Officer Houston.

43. PPO Ransom did not successfully complete the police recruit training process.

44. Nevertheless, Officer Houston's complaint triggered a series of events that worked together to curtail Plaintiff's intended career progression.

45. Due to Officer Houston's complaint, an inquiry was opened into Plaintiff's actions on June 30, 2021.

46. On July 2, 2021, just two days after Plaintiff reported PPO Ransom's complaint of discrimination, Deputy Chief Shannon Wichtendahl and Captain Michael Clark met with Plaintiff to inform him that an investigation was being launched into the June 30th call.

47. Plaintiff was told not to have any further contact with the Police Training Officers (PTO's) who worked with PPO Ransom, not to talk to anyone about the facts related to the inquiry, and not to look up any information related to his inquiry.

48. On July 14, 2021, Plaintiff was interviewed by Lieutenant Alicia Jones, IAB investigator. In this interview, Plaintiff stated that he made it very clear at the onset of his call that he was not calling to influence PPO Ransom's training outcome, but to discuss concerns she had shared with him about racial discrimination and how to avoid racial bias generally in the training process. Plaintiff also discussed his own experiences with discrimination to provide context for his involvement.

49. On July 19, 2021, Plaintiff's access to the Internal Affairs (IA) software was disabled unbeknownst to him. Deputy Chief Wichtendahl informed Plaintiff that he would no longer be able to instruct Fair & Impartial Policing (FIP) or administer polygraph examinations until the complaint investigation was concluded and had his status re-evaluated.

50. On July 19, 2021, Deputy Chief Wichtendahl and Lt. Alicia Jones informed Plaintiff that he was being temporarily transferred to Second Precinct for allegedly violating Deputy Chief Wichtendahl's July 2, 2021, direct order.

51. Plaintiff was not told how he had violated the order.

52. On July 22, 2021, Plaintiff was informed that his FIP Instructor certification was cancelled for September 8-9, 2021.

53. On July 23, 2021, Plaintiff emailed Captain Harry McBrien to request a meeting with Chief Paul Neudigate to discuss his not being able to conduct FIP training and polygraph examinations, and his cancelled FIP recertification training.

54. On July 27, 2021, Plaintiff met with Chief Neudigate and Deputy Chief Sean Adams to request that these punitive actions be reversed since there had been no determination that he had violated any departmental any rule or policy.

55. Late in the evening on July 27, 2021, Plaintiff was informed that he had been re-enrolled in FIP recertification training.

56. On July 28, 2021, Captain John Orr informed Plaintiff that he had to notify him before he started to administered polygraphs again and that Plaintiff's former polygraphs had been reviewed to see if he had provided any assistance to examinees, presumably black examinees.

57. On July 30, 2021, Deputy Chief Wichtendahl informed Plaintiff that his 2nd Floor access to Headquarters had been disabled.

58. Plaintiff states that his entire access to Headquarters was disabled from July 30, 2021, to June 10, 2022, preventing him from performing his work duties.

59. On August 9, 2021, Capt. Harry McBrien requested that Plaintiff turn in his IA office key.

60. On September 12, 2021, Plaintiff had been at the Second Precinct for 55 days and he decided to email Chief Neudigate's assistant to schedule a meeting.

61. On September 13, 2021, Plaintiff was told that he needed to meet with Deputy Chief Adams first and the latter would not be available until September 27, 2021.

62. When September 27th came, Deputy Chief Adams' assistant informed Plaintiff that he would need to reschedule the 11:00 a.m. meeting for October 5, 2021, at 11:00 a.m.

63. On September 28, 2021, Lt. Alicia Jones emailed Plaintiff to review the July 14, 2021, IA interview transcript. This was 76 days after the interview.

64. On October 5, 2021, Lt. Jones interrogated Plaintiff for two hours and 30 minutes.

65. After this interrogation, Plaintiff met with Deputy Chief Adams and requested an end to the adverse actions after hearing for the first time the full scope of the investigation because he had not violated any department rule and did not feel the investigation was fair or impartial.

66. During the July 14, 2021, interview, Lt. Jones never mentioned anything about Plaintiff's alleged improper computer use or any access of the IAB system.

67. On November 29, 2021, Plaintiff emailed Deputy Chief Adams to request a meeting with City Manager Patrick Duhaney.

68. On December 6, 2021, Plaintiff met with Deputy Chief Adams who discouraged the meeting with the City Manager since the latter was unaware of the investigation. At this point, Deputy Chief Adams stated the administrative investigation was complete, but Plaintiff had not reviewed the second transcript for accuracy.

69. On December 6, 2021, Plaintiff contacted the City of Virginia Beach's Human Resources Department to request the police department be investigated for the harassment he had experienced led by Deputy Chief Wichtendahl.

70. Plaintiff met with Brad Lewis, Human Resources Representative, to file a complaint. Mr. Lewis suggested that Plaintiff inquire about a copy of the October 5, 2021, interrogation transcript.

71. On December 10, 2021, Plaintiff notified Lt. Jones that he had been told the administrative investigation was complete and requested the October 5, 2021, transcript to review.

72. On December 15, 2021, Plaintiff received an email from Lt. Jones for him to review the October 5th transcript.

73. The next day, Plaintiff requested an audio file of the October 5th interrogation.

74. On December 30, 2021, Plaintiff again contacted Chief Neudigate to request his intervention in the ongoing hostile work environment.

75. On January 5, 2022, Plaintiff met with Brad Lewis from the City's Human Resources regarding the ongoing hostile work environment.

76. On April 6, 2022, Plaintiff received an email from Kari Kolar, Virginia Beach Assistant Commonwealth Attorney, stating that an allegation of untruthfulness had been brought to their office for review of a Brady Disclosure, which could mean that Plaintiff would be added to a database referencing police misconduct.

77. On April 6, 2022, Deputy Chief Adams and Captain McBrien presented Plaintiff with a Memorandum of Charges for violating and sustained findings for Departmental Rule #2, *Conduct Unbecoming,* and Rule #5, *Disobedience of Others.*

78. On April 12, 2022, Plaintiff met with Captain McBrien behind the precinct to provide him with his response to the charges.

79. On April 20, 2022, Plaintiff sent Assistant Commonwealth Attorney Kari Kolar his response to the Brady List referral.

80. Because of the escalating actions and no intervention from Chief Neudigate, Plaintiff filed an EEOC Charge on May 19, 2022, with the U.S. EEOC's Norfolk Local Office.

81. On May 25, 2022, Colin Stolle, Virginia Beach Commonwealth Attorney, sent Plaintiff a letter stating that the allegation brought to his office did not require a Brady Disclosure.

82. On June 6, 2024, almost one year after his initial report of his opposition to racial discrimination, Plaimtiff received a Memorandum of Charges.

83. On June 15, 2022, Plaintiff was informed that Chief Neudigate did not approve Plaintiff's participation in the Atlanta Police Department Promotional process and Deputy Chief Adams would discuss it once he returned on June 20th.

84. On August 2, 2022, Plaintiff met with Chief Neudigate, Deputy Chief Adams, and Captain McBrien, not knowing that this was a pre-disciplinary meeting in violation of the City's personnel rules.

85. Plaintiff was not given proper due process and was demoted from Sergeant to Master Police Officer. Plaintiff had been on the Lieutenant promotion list.

86. Plaintiff is now ineligible for promotion to Lieutenant, has suffered demotion, a cut in pay, and damage to his professional and personal reputation due to his voiced opposition to racial discrimination, real and perceived, in the police recruiting training process.

87. The U.S. EEOC issued Plaintiff a Notice of Right to Sue on December 12, 2023.

88. Plaintiff timely files this Complaint based on being subjected to a hostile work environment due to race and retaliation related to the terms, conditions, and privileges of his employment.

## CLAIMS

## COUNT ONE

**Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) et seq.**

89. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

90. The Virginia Beach Police Department and its agents engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, Sec. 2000e-2, by subjecting him to a hostile working environment based on race when he was transferred from IAB to the Second Precinct; stripping him of his ability to conduct FIP training and polygraph examinations; denying his access to headquarters; revoking his IAB key access; subjecting him to a six-month wide-ranging internal investigation without communication of the status of the investigation; notifying him of the actual charges 10 months after the start of the investigation; referring him to the Virginia Beach Commonwealth Attorney's office for a Brady Disclosure; denying him promotional opportunities; and demoting him 14 months after the start of the investigation without proper notice of his due process rights.

91. The Virginia Beach Police Department's articulated reasons for his actions raise a reasonable inference of discrimination based on the fact that these actions occurred only after Plaintiff made reports of alleged discriminatory behavior in the police recruit training process.

92. The effect of the Virginia Beach Police department, by and through its agents, unlawful employment practices was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, because of race.

## COUNT TWO

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000e et seq.**

93. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs.

94. The Virginia Beach Police Deportment engaged in unlawful employment practices in violation of Section 704(a) of Title VII, Sec. 2000e-3, by transferring him from the Internal Affairs Bureau (IAB) to the Second Precinct; stripping him of his ability to conduct FIP training and polygraph examinations; denying him access to headquarters; having his IAB key taken; subjecting him to a six-month wide-ranging internal investigation without communication of the status of the investigation; notifying him of the actual charges 10 months after the start of the investigation; referring him to the Virginia Beach Commonwealth Attorney's office for a Brady Disclosure; denying him promotional opportunities; and demoting him 14 months after the start of the investigation without proper notice of his due process rights.

95. The Virginia Beach Police Department's articulated reasons for his actions raise a reasonable inference of retaliation based on the fact that these actions occurred only after Plaintiff made reports of alleged discriminatory behavior in the police recruit training process.

96. The effect of the Virginia Beach Police department, by and through its agents, unlawful employment practices was to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his voiced opposition to racial discrimination.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Banks prays for the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, Public law, 88-352, 42 U.S.C. § 2000e et seq.

b. Back pay, front pay, raises, and pay differential since June 2021 (including interest and benefits);

c. Restoration of his title as Sergeant and position as an investigator in Internal Affairs;

d. Removal of all negative information from his employment file which would pose a barrier to his career advancement;

e. Promotion to the rank of Lieutenant;

f. Assurances of no future retaliation;

g. Compensatory and punitive damages;

h. Reasonable attorney's fees and all expenses and costs of this action; and

i. Such other and legal and equitable relief as the Court deems necessary, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of all issues triable in this action.

March 6, 2024                                         /s/ Pamela Johnson Branch

Pamela Johnson Branch, Esq.
VSB #41008
Tully Rinckey, PLLC
2001 L Street, N.W., Suite 902
Washington, D.C. 20036
202-375-2241 (office)
202-6402-2059 (fax)
pbranch@fedattorney.com
*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that this Complaint was filed via ECF on this 6th day of March 2024, with a copy mailed to the undersigned parties:

Michael Banks
615 Prince Andrew Court
Chesapeake, VA  23320

        Respectfully Submitted,

        */s/ Pamela Johnson Branch*

        _____
        Pamela Johnson Branch, Esq., VSB # 41008
        Senior Counsel
        Tully Rinckey, PLLC
        2001 L Street, Suite 902
        Washington, D.C. 20036
        202-375-2241 (office)
        202-640-2059 (fax)
        pbranch@fedattorney.com
        *Counsel for Plaintiff*