UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**MICHAEL BANKS,**

    **Plaintiff,**

v.                                                                 Civil Action No. 2:24-cv-0149

**CITY OF VIRGINIA BEACH,**

    **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is a Motion to Dismiss the Amended Complaint pursuant to the Federal Rule of Civil Procedure ("FRCP") 12(b)(6) filed by the City of Virginia Beach (the "City" or "Defendant"). ECF No. 10 ("Def.'s Mot."). Defendant filed a Memorandum in Support of the Motion. ECF No. 11 ("Def.'s Mem."). Michael Banks ("Plaintiff") filed a Response in Opposition to Defendant's Motion. ECF No. 12 ("Pl.'s Resp."). Defendant filed a Reply. ECF No. 14. The Court has considered the parties' memoranda, and this matter is ripe for judicial determination. For the reasons stated herein, Defendant's Motion to Dismiss is **GRANTED in PART and DENIED in PART**.

### I.     FACTS AND PROCEDURAL HISTORY

Relevant to Defendant's Motion to Dismiss and stated in the light most favorable to Plaintiff, the following alleged facts are drawn from the Amended Complaint and attachments thereto. Am. Compl., ECF No. 6.

Around February 3, 1997, Plaintiff, who is Black, began his career as a Police Officer Recruit with the Virginia Beach Police Department ("VBPD"). *Id.* ¶¶ 5, 9. On June 16, 1997, Plaintiff completed his training and became a Police Officer in the Third Precinct. *Id.* ¶ 10. Around

1

February 16, 2003, the VBPD promoted Plaintiff to Master Police Officer and then to Sergeant on December 20, 2016. *Id.* ¶¶ 11–12. After becoming a Sergeant, Plaintiff was assigned to the Internal Affairs Bureau ("IAB") at the VBPD headquarters. *Id.* ¶ 13. As an investigator at IAB, Plaintiff's responsibilities include receiving and investigating complaints filed against the officers. *Id.* ¶¶ 14–15.

Around June 30, 2021, a Black lieutenant approached Plaintiff regarding Probationary Police Officer ("PPO") Pairrys Ransom's concerns about not receiving the same training as her white colleagues. *Id.* ¶ 17.[1] Allegedly, Plaintiff had a reputation at the VBPD to mentor minority recruits and advocate for anti-discrimination. *Id.* ¶ 18. Plaintiff agreed to speak with PPO Ransom and offer advice. *Id.* ¶ 20. PPO Ransom informed Plaintiff that she was experiencing some challenges in training with Officer Andrew Houston, who is Black, at the Third Precinct. *Id.* ¶ 21. On June 24, 2021, Plaintiff contacted Sergeant Jessica Cole, who is white and the Third Precinct Training Supervisor, regarding PPO Ransom's racial discrimination concerns, but Sergeant Cole quickly ended the conversation. *Id.* ¶¶ 22–23. On June 28, 2021, Plaintiff attempted to talk to Sergeant Cole again, but she ended the conversation. *Id.* ¶ 24. The next day, PPO Ransom met with Sergeant Cole to discuss her racial discrimination concerns, in which Sergeant Cole allegedly did nothing to remedy the issue. *Id.* ¶¶ 25–26.

On June 20, 2021, Plaintiff contacted Officer Houston, in an unofficial capacity, to share PPO Ransom's concerns about racial discrimination. *Id.* ¶¶ 28–30. Allegedly, Officer Houston did not inform Plaintiff that he was uncomfortable with the conversation. *Id.* ¶ 31. Additionally,

---

[1] The dates alleged in Plaintiff's Amended Complaint overlap with one another describing the events that occurred. *See generally* Am. Compl. In the Amended Complaint, Plaintiff alleges that he learned about the discrimination around June 30, 2021. *Id.* ¶ 17. However, in Plaintiff's Response, he learned that the alleged discrimination occurred on June 20, 2021. Pl.'s Resp. at 1. The Court believes Plaintiff's counsel made a typographical error in the Amended Complaint, and thus, the correct date should be June 20, 2021.

2

Plaintiff was unaware that June 30, 2021, was PPO Ransom's last training day with Officer Houston "but hoped that the conversation would bring awareness and greater sensitivity around training concerns for the future." *Id.* ¶ 32. Unknown to Plaintiff, Officer Houston filed a complaint against Plaintiff, alleging that he abused his authority and felt coerced to pass PPO Ransom in the training process. *Id.* ¶ 33.

On June 30, 2021, an inquiry was opened into Plaintiff's actions. *Id.* ¶ 38. On July 2, 2021, Deputy Chief Shannon Wichtendahl and Captain Michael Clark informed Plaintiff of an investigation into the June 30th call. *Id.* ¶¶ 39–40. They told him not to have any contact with the training officers who worked with PPO Ransom, discuss the facts of the investigation, and look up information relating to the investigation. *Id.* On July 14, 2021, IAB investigator Lieutenant Alicia Jones interviewed Plaintiff, where he discussed the nature of the June 30th call and provided his account of racial discrimination. *Id.* ¶ 41. On July 19, 2021, "Plaintiff's access to the Internal Affairs (IA) software was disabled" and "Deputy Chief Wichtendahl informed Plaintiff that he would no longer be able to instruct Fair & Impartial Policing (FIP) or administer polygraph examinations until" the investigation concluded. *Id.* ¶ 42.

On that same day, Deputy Chief Wichentdahl and Lieutenant Jones informed Plaintiff of his transfer to the Second Precinct for violating Deputy Chief Wichtendahl's order. *Id.* ¶¶ 43–44. However, Plaintiff was unaware of how he violated Deputy Chief Wichtendahl's order. *Id.* On July 22, 2021, Plaintiff's FIP certification was canceled. *Id.* ¶ 45. The next day, Plaintiff emailed Captain Harry McBrien to request a meeting with Chief Paul Neudigate to discuss his FIP recertification training and polygraph examinations. *Id.* ¶ 46. On July 27, 2021, Plaintiff met with Chief Neudigate and Deputy Chief Sean Adams to discuss the events and request reversal of the punitive actions since the VBPD had not determined whether he violated any rule or policy. *Id.* ¶

3

47. Later that evening, Plaintiff was re-enrolled in FIP training. *Id.* ¶ 48. On July 28, 2021, Captain John Orr instructed Plaintiff to notify him before administering polygraphs and that "Plaintiff's former polygraphs had been reviewed to see if he had provided any assistance to examinees, presumabl[y] Black examinees." *Id.* ¶ 49. Two days later, Plaintiff learned from Deputy Chief Wichentdahl that his access to headquarters was disabled, which continued until June 10, 2022. *Id.* ¶¶ 50–51.

On August 9, 2021, Captain McBrien requested that Plaintiff return his IA office key. *Id.* ¶ 52. On September 12, 2021, Plaintiff contacted Chief Neudigate's assistant to schedule a meeting since he had been at the Second Precinct for fifty-five days; however, he was told that he needed to meet with Deputy Chief Adams first on October 5, 2021. *Id.* ¶¶ 53–55. On September 28, 2021, Lieutenant Jones emailed Plaintiff the July 14th interview transcript to review and later interrogated Plaintiff for two hours and thirty minutes on October 5, 2021. *Id.* ¶ 56–57. After the interrogation, Plaintiff met with Deputy Chief Adams to request an end to the adverse actions after learning the scope of the investigation for the first time. *Id.* ¶ 58. Allegedly, Lieutenant Jones never mentioned during the July 14th interview with Plaintiff about his improper computer use or any access to the IAB system. *Id.* ¶ 59.

"On November 29, 2021, Plaintiff emailed Deputy Chief Adams to request a meeting with City Manager Patrick Duhaney." *Id.* ¶ 60. On December 6, 2021, Deputy Chief Adams discouraged Plaintiff from meeting with City Manager Duhaney because he was aware of the investigation. *Id.* ¶ 61. Additionally, Deputy Chief Adams told Plaintiff that the administrative investigation was complete, "but Plaintiff had not reviewed the second transcript for accuracy." *Id.* That same day, Plaintiff requested the City of Virginia Beach Human Resources Department to investigate the VBPD for the harassment Plaintiff endured by Deputy Chief Wichtendahl. *Id.* ¶ 62. At some point,

4

Plaintiff met with Human Resources Representative Brad Lewis to file a complaint, but "Mr. Lewis suggested that Plaintiff inquire about a copy of the October 5, 2021, interrogation transcript." *Id.* ¶ 63. On December 10, 2021, Plaintiff contacted Lieutenant Jones requesting the October 5th interrogation transcript. *Id.* ¶ 64. Five days later, Plaintiff received an email from Lieutenant Jones to review the October 5th transcript, and the next day, Plaintiff requested the audio file. *Id.* ¶¶ 65–66. On December 30, 2021, Plaintiff requested another meeting with Chief Neudigate for his intervention. *Id.* ¶ 67.

On January 5, 2022, Plaintiff met with Mr. Lewis regarding the mistreatment he was experiencing in the workplace. *Id.* ¶ 68. On April 6, 2022, Virginia Beach Assistant Commonwealth Attorney Kari Kolar emailed Plaintiff regarding an "allegation of untruthfulness [that] had been brought to their office for review of a Brady Disclosure, which could mean that Plaintiff would be added to a database referencing police misconduct." *Id.* ¶ 69. That same day, "Deputy Chief Adams and Captain McBrien presented Plaintiff with a Memorandum of Charges for violating and sustained findings for Departmental Rule #2, Conduct Unbecoming and Rule #5, Disobedience of Others." *Id.* ¶ 70. Six days later, Plaintiff provided Captain McBrien with a response to the charges. *Id.* ¶ 71. On April 20, 2022, Plaintiff responded to Attorney Kolar's email regarding the Brady list referral. *Id.* ¶ 72. On May 19, 2022, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 73.

Six days later, Virginia Beach Commonwealth Attorney Colin Stolle "sent Plaintiff a letter stating that the allegation brought to his office did not require a Brady Disclosure." *Id.* ¶ 74. On June 15, 2022, Plaintiff participated in the Atlanta Police Department Promotional process, which Chief Neudigate did not approve, and informed Plaintiff that Deputy Chief Adams would discuss the situation with Plaintiff once he returned on June 20, 2022. *Id.* ¶ 76. "On August 2, 2022,

Plaintiff met with Chief Neudigate, Deputy Chief Adams, and Captain McBrien, not knowing that this was a pre-disciplinary meeting in violation of the City's personnel rules." *Id.* ¶ 77. Plaintiff was on the Lieutenant promotion list but was demoted from Sergeant to Master Police Officer. *Id.* ¶ 78. Allegedly, "Plaintiff is now ineligible for promotion to Lieutenant, has suffered demotion, a [pay cut], and damage to his professional and personal reputation due to his opposition [in] racial discrimination in the police [recruit] training process." *Id.* ¶ 79. On December 12, 2023, the U.S. EEOC issued Plaintiff a Right to Sue letter. *Id.* ¶ 80. On June 6, 2024, Plaintiff received a Memorandum of Charges after reporting racial discrimination. *Id.* ¶ 75.[2]

Accordingly, Plaintiff is seeking damages for the racially hostile work environment he experienced while working at VBPD. *Id.* ¶ 81. Specifically, Plaintiff asserts two Counts against Defendant:

> **Count One.  Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶¶ 82–85);**
>
> **Count Two.  Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.* (*Id.* ¶¶ 86–89).**

On July 15, 2024, Defendant filed a Motion to Dismiss Counts One and Two and a Memorandum in Support. On July 24, 2024, Plaintiff filed a Memorandum in Opposition. On July 30, 2024, Defendant filed a Reply.

---

[2] The Court believes that the year should be 2022, not 2024. Also, the Court notes the discrepancy between Plaintiff receiving a memorandum of the charges on April 6, 2022, and June 6, 2022. *See* Am. Compl. ¶¶ 70, 75.

6

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. Considering a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 677, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

### III. DISCUSSION

Under Rule 12(b)(6), Defendant moves to dismiss Counts One and Two of the Amended Complaint for failure to state a claim upon which relief can be granted. Def.'s Mem. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Thus, the Court will determine whether Plaintiff has stated a claim for relief in Counts One and Two. For the reasons stated below, Defendant's Motion to Dismiss is granted in part and denied in part.

### A. Count One—Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq*.

Plaintiff's claim in Count One alleges discrimination based on race. Am. Compl. ¶¶ 82–85. Specifically, Plaintiff asserts that the VBPD "engaged in unlawful employment practices . . . by subjecting him to a hostile working environment based on race." *Id.* ¶ 83. Allegedly, the VBPD engaged in a series of actions, which "raise a reasonable inference of discrimination" that occurred after Plaintiff reported alleged discriminatory behavior in the police recruit training process. *Id.* ¶ 84. Plaintiff argues that he has been deprived of equal employment opportunities because of his race. *Id.* ¶ 85. In the Motion, Defendant argues that Plaintiff failed to exhaust his administrative remedies by failing to mention racial discrimination or a hostile work environment in the EEOC charge. Def. Mem. at 4. Additionally, Plaintiff's allegations of discrete acts of discrimination fail to state a claim for a hostile work environment. *Id.* Plaintiff responded to the Motion; however, his response failed to oppose the arguments raised in the Motion. *See* Pl.'s Resp.

#### i. Administrative Exhaustion

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, religion, sex, and national origin. "An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC within a certain time of the

8

alleged unlawful act." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000(e)–5(e)(1)). "A charge is acceptable only if it is 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Id.* (citing 29 C.F.R. § 1601.12(b)). Next, the EEOC investigates and notifies the employer of the alleged unlawful discrimination. 42 U.S.C. § 2000(e)–5(b). "If the [EEOC] determines after such investigation that there is reasonable cause to believe that the charge is true, the [EEOC] shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* However, if the EEOC determines not to file a civil action, then the individual may file a civil action against their employer. 42 U.S.C. § 2000(e)–5(f)(1).

The claims raised under the Title VII complaint should not exceed the scope of the EEOC charge, and if so, it is procedurally barred. *Patuxent Inst.*, 429 F.3d at 509. "For example, the plaintiff's claim generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Id.* "At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Id.* On the other hand, lawyers usually do not complete the administrative charges, so courts construe them liberally. *Id.* at 508.

Here, although Plaintiff does not sufficiently oppose the arguments raised in Defendant's Motion, the Court is not convinced by Defendant's argument that Plaintiff did not raise a claim of race discrimination in the EEOC charge. In the EEOC charge, Plaintiff based his discrimination on "retaliation and race." *See* Def. Mem. at Ex. 1. Thus, the Court finds that Plaintiff exhausted his administrative remedies.

9

### ii. Race Discrimination and Racial Hostile Work Environment Claims

However, the particulars of Plaintiff's charge fail to describe discrimination based on race. To prove racial discrimination, Plaintiff must show "(i) membership in a protected class; (ii) satisfactory job performance; (iii) an adverse employment action; and (iv) more favorable treatment of someone outside the protected class with comparable qualifications." *Wilcox v. Transmodal Sols., LLC*, 473 F. Supp. 3d 574, 582 (E.D. Va. 2020). First, Plaintiff is a member of a protected class. Second, Plaintiff was promoted to Sergeant and worked for Internal Affairs, which suggests his job performance was satisfactory. Third, Plaintiff was demoted from Sergeant to Master Police Officer. However, Plaintiff cannot meet the fourth element. Plaintiff has not provided sufficient evidence to support more favorable treatment to someone outside of the protected class. According to the factual allegations, Officer Houston, who is Black, initiated the complaint against Plaintiff, which led the VBPD to investigate his alleged wrongdoing. There is no evidence of racial discrimination based on these facts.

Assuming Plaintiff's Amended Complaint is based on a racially hostile work environment claim, Plaintiff failed to plead this in the EEOC charge. However, the United States Court of Appeals for the Fourth Circuit has found "exhaustion where both the administrative complaint and formal litigation concerned 'discriminat[ion] in promotions' but involved different aspects of the 'promotional system,' . . . and where both the EEOC charge and the complaint included claims of retaliation by the same actor, but involved different retaliatory conduct." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012). Courts try to "strike a balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over

technicalities on the other." *Id.* In this case, it is difficult for the Court to determine that these actions amounted to a racially hostile work environment.

Even if the EEOC charge and Amended Complaint are reasonably related to amount to a racially hostile work environment claim, Plaintiff still fails to meet the elements of the claim. To prove a racially hostile work environment, Plaintiff must show "(1) unwelcome conduct; (2) that is based on the plaintiff's . . . race; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022). "The severe or pervasive conduct which gives rise to an abusive work environment must be both objectively and subjectively 'hostile' and 'abusive.'" *Id.* "Objective analysis of whether a workplace is hostile and abusive looks to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* Here, Plaintiff's racial status as Black does not draw a reasonable inference that the unwelcome conduct was based on his race. Plaintiff has not presented any evidence of racial slurs or animus to support a racially hostile work environment claim.

In *Boyer-Liberto v. Fontainebleau Corporation*, the plaintiff, an African American waitress working for the defendant, was called a "'porch monkey' and threatened with the loss of her job by a Caucasian restaurant manager." 786 F.3d 264, 268 (4th Cir. 2015). Defendant fired the plaintiff after she reported the racial harassment. *Id.* The Court determined that she could have reasonably believed that she was being subjected to a racially hostile work environment because the racial epithet is "not just humiliating, but 'degrading and humiliating in the extreme.'" *Id.* at 285.

In this case, the factual allegations do not support a hostile work environment because of race. The Court cannot conduct a hostile work environment analysis without the Amended Complaint tying in some racial animus similar to the plaintiff in *Boyer-Liberto*. Thus, Defendant's Motion to Dismiss Count One is granted.

### B. Count Two— Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, Public Law 88-352, 42 U.S.C. § 2000(e) *et seq.*

Plaintiff's claim in Count Two alleges discrimination based on retaliation. Am. Compl. ¶¶ 86–89. Specifically, Plaintiff asserts that the VBPD engaged in unlawful employment practices by:

> transferring him from the Internal Affairs Bureau to the Second Precinct; stripping of his ability to conduct FIP training and polygraph examinations; denying him access to headquarters; having his IAB key taken; subjecting him to a six-month wide-ranging internal investigation without communication of the status of the investigation; notifying him of the actual charges 10 months after the start of the investigation; referring him to the Virginia Beach Commonwealth Attorney's office for a Brady Disclosure; denying him promotional opportunities; and demoting him 14 months after the start of the investigation without proper notice of his due process rights.

*Id.* ¶ 87.

Plaintiff argues that the VBPD retaliated against him after he made reports of alleged discrimination in the police recruit training process. *Id.* ¶ 88. Furthermore, Plaintiff claims that he has been deprived of equal employment opportunities because he voiced opposition to racial discrimination. *Id.* ¶ 89. However, Defendant argues that the EEOC charge does not reference the alleged retaliatory actions between July 23, 2021, and May 19, 2022. Def.'s Mem. at 4–5. Additionally, Defendant argues that the alleged retaliatory actions that occurred before July 23, 2021, fall outside the 300-day filing period. *Id.*

The parties' briefing reveals confusion over the type of retaliation claim Plaintiff brought before the Court. Before deciding Count Two, the Court must remedy that confusion and apply the correct legal framework.

### i. Two Distinct Causes of Action for Retaliation: Discrete Acts of Retaliation and Retaliatory Hostile Work Environment

Title VII makes it unlawful for an employer to discriminate against an employee for opposing discrimination or making a "charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "Its purpose is to protect employees who complain about real or perceived discrimination in the workplace from retaliation, which threatens to chill the willingness of employees to speak up." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022).

There are two ways for an employee to recover when an employer retaliates against an employee for opposing discrimination. The first method is through a basic retaliation claim under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prove retaliation under the *McDonnell Douglas* framework, a plaintiff must first establish a prime facie case showing "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse action against [him], and (3) that there was a causal link between the two events." *Wormuth*, 54 F.4th at 212. Then, the burden shifts to the employer to establish a legitimate, non-discriminatory reason for its actions. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If the employer meets its burden, then the burden shifts back to the employee to "rebut the employer's evidence by demonstrating that the employer's purported nonretaliatory reasons 'were not its true reasons, but were a pretext for discrimination.'" *Id.* The second method is a claim for a retaliatory hostile work environment. "To be actionable, the conduct

must create an objectively hostile or abusive work environment, and the victim must also perceive the environment to be abusive." *Bhella v. England*, 91 F. App'x 835, 845 (4th Cir. 2004).

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court stated the statute of limitations period for employment discrimination claims is different for hostile work claims. 536 U.S. 101 (2002). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.' A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. However, "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. It comprises a series of acts constituting one unlawful employment practice that must be filed within 300 days after the alleged unlawful employment practice occurred. *Id.* at 117. "It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period." *Id.* As long as there is one timely act contributing to the hostile work environment claim, then the entire series of claims are actionable. *Id.*

Discrete acts are mutually exclusive of the acts that support a hostile work environment claim. A discrete act can support a claim for retaliation or discrimination, or it is a component of a hostile work environment claim. Thus, discrete acts cannot be both for purposes of an analysis. A reviewing court must parse through and pull discrete acts and evaluate them as individual actionable incidents or as a component in a hostile work environment claim. *Morgan* offers guidance on what constitutes a discrete act of discrimination or a hostile work environment claim. The Supreme Court states that "termination, failure to promote, denial of transfer, or refusal to

hire" are examples of discrete acts. *Id.* at 114. For hostile work environments, on the other hand, courts look to the cumulative effect of the act giving rise to the harassment. *Id.* at 115. The Court must now decide if Plaintiff has plausibly alleged retaliation or retaliatory hostile work environment. For the reasons stated below, the Court will cabin Plaintiff's retaliation claim, but the Court finds that Plaintiff fails to plead a retaliatory hostile work environment.

### ii. Retaliation

First, Plaintiff must allege that he engaged in a protected activity. A "'protected activity' may fall into two categories, opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation activities are outlined in 42 U.S.C. § 2000e-3(a).

Here, Plaintiff did not engage in protected activity when he spoke to Officer Houston on June 30, 2021. Am. Compl. ¶ 28. At best, Plaintiff had a conversation with Training Officer Houston, whose position is lower than Plaintiff's, in an unofficial capacity, about the alleged racial discrimination that PPO Ransom faced. Plaintiff alleges that the intent of the conversation with Officer Houston was "to share that PPO Ransom had a perception that she was not being treated fairly in the training process and how to avoid the perception and perpetuation of any racial bias." Am. Compl. ¶ 30. This is not participation nor opposition activity. However, Plaintiff did engage in protected activity when he emailed Captain McBrien on July 23, 2021, to request a meeting with Chief Neudigate to discuss his inability to conduct FIP training and polygraph examinations. Am. Compl. ¶ 46.

Additionally, Plaintiff engaged in protected activity when he filed the EEOC charge on May 19, 2022. Accordingly, Plaintiff cannot claim retaliation for the events that occurred before July 23, 2021, because those events happened before Plaintiff requested a meeting with Chief Neudigate. Thus, the Court finds that Plaintiff engaged in protected activity on two occasions: 1) July 23, 2021, and 2) May 19, 2022.

Second, Plaintiff must allege that his employer took an adverse action against him. "An adverse employment action is a discriminatory act that adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (internal citation and quotation marks omitted). This can include "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion." *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 447 (D. Md. 2022).

Here, the Court finds that the VBPD engaged in an adverse employment action between July 23, 2021, and April 20, 2022. The discrete acts include disabling his access to the VBPD headquarters and returning his Internal Affairs office key. Defendant argues that the discrete acts are untimely because Plaintiff failed to include the acts in his EEOC charge within 300 days of the alleged unlawful act.

Title VII makes clear that an individual must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). However, "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, [then] the plaintiff may advance such claims in her subsequent civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). Courts consider a plaintiff's claims to be reasonably related to the allegations in the EEOC charge "to the extent that those claims are consistent with the plaintiff's original

theory of the case." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). "That means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001) (citation and quotations removed). "[W]hile it is true that [w]e construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Freeman*, 291 F.3d at 636 (citations and quotations omitted).

In the present case, Plaintiff's EEOC charge alleged that the VBPD retaliated against him. Although the particulars described in the EEOC charge fail to include the discrete acts that occurred between July 23, 2021, and April 20, 2022, the Court finds that the allegations in the Amended Complaint are reasonably related and would be expected to follow from a reasonable EEOC investigation. Both the EEOC charge and Amended Complaint allege that the VBPD committed retaliatory actions through Plaintiff's July 23, 2021, email requesting a meeting with Chief Neudigate.

The Court also finds that the VBPD engaged in an adverse employment action by demoting Plaintiff from Sergeant to Master Police Officer around August 2, 2022. Although Defendant argues that the demotion is untimely, the Court finds that the demotion is reasonably related to his EEOC charge. *See First Union Nat. Bank*, 202 F.3d at 247. Thus, the Court finds that Plaintiff plausibly alleged that the VBPD engaged in adverse employment actions against him.

Third, Plaintiff must allege a causal link between the two events. "[A] plaintiff may present evidence of close temporal proximity between the protected activity and the adverse employment action, or a pattern of conduct." *Webb v. K.R. Drenth Trucking, Inc.*, 780 F. Supp. 2d 409, 413 (W.D.N.C. 2011). Here, Plaintiff emailed Captain McBrien to request a meeting with Chief

17

Neudigate to discuss the actions happening to him, and a week later, he lost access to the 2nd floor at the VBPD Headquarters and over two weeks later, he was instructed to return his Internal Affairs office key. There is close temporal proximity between the two events.

Additionally, there is close temporal proximity between the filing of the EEOC charge and Plaintiff's demotion around August 2, 2022. Accordingly, Plaintiff plausibly alleged a causal link between the two events. Therefore, Plaintiff stated a claim for retaliation between July 23, 2021, and April 20, 2022, and after May 19, 2022.

### iii.   Retaliatory Hostile Work Environment

Assuming Plaintiff's Amended Complaint is based on a retaliatory hostile work environment, Plaintiff failed to plead this in his EEOC charge. Even if the EEOC charge and Amended Complaint are reasonably related, Plaintiff still fails to meet the elements of the claim. "[A] hostile work environment claim based on retaliation must instead allege that the retaliatory conduct (1) was unwelcome, (2) was sufficiently severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) can be attributed to the employer." *Wormuth*, 54 F.4th at 218. "Accordingly, a retaliatory hostile work environment claim must be so severe or pervasive that it would dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 217.

Here, the various incidents alleged are not actionable as a retaliatory hostile work environment claim. For example, Plaintiff's access to Internal Affairs was disabled, and he was not allowed to attend a trainer's course. However, Plaintiff's factual allegations do not support that these actions were unwelcome, let alone sufficiently "severe or pervasive." The other alleged incidents include Plaintiff's transfer to the Second Precinct, not conducting polygraph examinations, and returning the Internal Affairs office key. These incidents are not "severe or

18

pervasive" either.³ Even if the Court considered Plaintiff's August 2, 2022, demotion to Master Police Officer to support a retaliatory hostile work environment claim, Plaintiff failed to Amend the EEOC charge to include the demotion. *See Patuxent Inst.*, 429 F.3d at 509. The demotion is time-barred. Plaintiff had 300 days from the demotion to include it in the EEOC charge to support Plaintiff's claim for a retaliatory hostile work environment. The Court refuses to mix untimely discrete acts to support a retaliatory hostile work environment claim because there is not at least one act contributing to the claim that falls within the 300 days before filing the EEOC charge on May 19, 2022. The events that occurred within the VBPD were perhaps annoying but not severe or pervasive enough to alter the terms and conditions of Plaintiff's employment.

The Court finds that Plaintiff stated a claim for retaliation for two discrete acts that occurred between July 23, 2021, and April 20, 2022, and the demotion that occurred after May 19, 2022. However, the Court does not find that Plaintiff stated a claim for a retaliatory hostile work environment. Thus, the Court denies Defendant's Motion to Dismiss Count Two.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED in PART and DENIED in PART**. ECF No. 10. The Court confines Plaintiff's retaliation claim to the two incidents that occurred between July 23, 2021, and April 20, 2022, and the demotion that occurred after May 19, 2022.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 26 , 2024

Raymond A. Jackson
United States District Judge

---

³ Interestingly, around July 21, 2021, the VBPD informed Plaintiff of his ability to conduct polygraph examinations and re-enrollment in the trainer's course. Am. Compl. ¶¶ 48–49.

19