UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MICHAEL BANKS,

        Plaintiff,

v.                                CIVIL ACTION NO. 2:24-cv-149

CITY OF VIRGINIA BEACH,

        Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant's Renewed Motion for Judgment as a Matter of Law and Alternative Motions for a New Trial and Stay of Enforcement of Judgment Pending Appeal resulting from a jury verdict in the above-styled matter to resolve a retaliation claim brought under Title VII. ECF Nos. 88, 89. After reviewing the parties' filings, the Court finds that a hearing is not necessary. For the reasons set forth herein, Defendant's motions for judgment as a matter of law and, in the alternative, a new trial are **DENIED**. Defendant's motion for stay of enforcement pending appeal is **GRANTED** in part and **DENIED** in part.

    **I.**    **FACTUAL AND PROCEDURAL HISTORY**

On May 14, 2024, Michael Banks ("Plaintiff") filed an Amended Complaint against the City of Virginia Beach ("Defendant") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e *et seq.* ECF No. 6. A four-day jury trial was conducted. ECF Nos. 65-68. Defendants moved for Judgment as a Matter of Law at the close of Plaintiff's case-in-chief, which the Court denied. On September 26, 2025, a jury returned a verdict finding the City of Virginia Beach retaliated against Plaintiff and awarded him $137,000 in damages. ECF No. 69, 77. Subsequently, Defendant orally renewed its motion for Judgment as a Matter of Law. The Court denied Defendant's motion but advised Defendant it could file the renewed motion in post-trial briefing.

1

On October 8, 2025, the Court also ordered equitable relief in the form of a back pay award of $31,667, prejudgment interest award of $4,091, reinstatement to Plaintiff's former rank and position, post-judgment interest, and injunctive relief that the City of Virginia Beach remove from Plaintiff's personnel file negative information related to his demotion, as well as respond neutrally to references on Banks's behalf. ECF No. 82.

Subsequently, the City of Virginia Beach filed the instant motions, requesting the Court set aside the verdict or, in the alternative, grant a new trial or a stay of enforcement of judgment pending appeal. ECF Nos. 88, 89.

## II.   LEGAL STANDARD

Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, a party may move for judgment as a matter of law before the case is submitted to the jury. If the court denies the motion made under Rule 50(a), Rule 50(b) allows the party to renew the motion for judgment as a matter of law after a jury verdict has been returned, no later than 28 days after the entry of judgment.

Rule 50(b) motions revolve around the sufficiency of the evidence presented at trial. A court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in his favor without weighing the evidence or assessing the witnesses' credibility, which are jury functions, not those of the Court. *Anderson v. G.D.C., Inc.*, 281 F.3d 452 (4th Cir. 2002). Judgment as a matter of law is proper only if "there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

In contrast with the Rule 50 standard, on a Rule 59 motion the Court may assess the weight of the evidence, is not constrained to view evidence in the light most favorable to the prevailing party, and may assess witness credibility. Under the Rule 59 standard, "a court can exercise its discretion to grant a new trial if the verdict . . . is against the weight of evidence." *Taylor v. Home*

*Ins. Co.*, 777 F.2d 849, 855 (4th Cir. 1985). A Rule 59(a) motion may also argue that the jury returned an excessive verdict. A court may set aside the jury's verdict and grant a new trial only if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice . . . ." *Lovell v. BBNT Sols., LLC*, 295 F. Supp. 2d 611, 618 (E.D. Va. 2003).

### III.   DISCUSSION

Renewed Motion for Judgment as a Matter of Law

Defendant argues that the evidence presented at trial proves conclusively that none of the adverse actions Defendant took against Plaintiff could have been causally connected to Plaintiff's protected activity. ECF No. 89 at 12.

The Court's November 26, 2024 Opinion dismissed Plaintiff's discrimination and hostile work environment claims and limited the case to Plaintiff's retaliation claim. ECF No. 16. The Opinion identified two protected activities—Plaintiff's July 23, 2021 request for a meeting with Chief Neudigate about his perceived discrimination and Plaintiff's May 19, 2022 filing of an EEOC Complaint—and three adverse actions—disabling Plaintiff's access to Headquarters, repossession of Plaintiff's key to the Internal Affairs Office, and Plaintiff's demotion. *Id.*

To prove retaliation under the *McDonnell Douglas* framework, a plaintiff must first establish a prime facie case showing "(1) that [he] engaged in a protected activity, (2) that [his] employer took an adverse action against [him], and (3) that there was a causal link between the two events." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022). Then, the burden shifts to the employer to establish a legitimate, non-retaliatory reason for its actions. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). If the employer meets its burden, then the burden shifts back to the

employee to "rebut the employer's evidence by demonstrating that the employer's purported non-retaliatory reasons 'were not its true reasons, but were a pretext.'" *Id.*

The Court finds there was sufficient evidence produced at trial for a reasonable jury to find in favor of the Plaintiff on his retaliation claim.

### *Disabling access to Headquarters after July 23 request for meeting*

On July 19, 2021, Plaintiff was verbally notified he was being transferred from Internal Affairs to the Second Precinct and was no longer permitted to conduct polygraph examinations or teach Fair and Impartial Policing. ECF No. 79, Trial Transcript at 73:21-24. Defendant provided witness testimony to establish that Lieutenant Jones emailed administrators to restrict Plaintiff's access to the second floor of Headquarters on July 19, 2021, prior to the July 23 protected activity. ECF 80, Trial Transcript at 278:7-14. However, Plaintiff also testified that, as of July 20, 2021, he still had access to the Headquarters building. ECF No. 79, Trial Transcript at 74:15-25. On July 23, 2021, Plaintiff engaged in protected activity by requesting a meeting with Chief Neudigate. ECF No. 79, Trial Transcript at 77:5-10. That meeting occurred on July 27, 2021, and, in that meeting, Chief Neudigate restored Plaintiff's polygraph and Fair and Impartial Policing duties. Trial Transcript at 78:20-25. Subsequently, Plaintiff received an email from Deputy Chief Wichtendahl that his second-floor access to Headquarters had been disabled. ECF No. 79, Trial Transcript at 79:10-24.

However, three days after he engaged in protected activity, Plaintiff's access to the entire Headquarters building, not just the second floor, was disabled for nearly a year. ECF No. 79, Trial Transcript at 149:2-10. Defendant conceded, at trial and in its post-trial briefing, it could identify no explanation for this adverse action and suggested it was either a mistake or clerical error. Whether the jury believes Defendant locked Plaintiff out of the Headquarters building for eleven

4

months based on a clerical error is a credibility determination for the jury. Because Defendant offered that its legitimate, nonretaliatory reason to justify barring Plaintiff from the Headquarters building for eleven months was an inexplicable administrative error, a reasonable jury could have determined, in light of all the evidence, this reason was a mere pretext for retaliation in response to Plaintiff's protected activity.

A reasonable jury could have found that, although Lieutenant Jones initiated the process of revoking Plaintiff's access to just the second floor of Headquarters before the protected activity, Defendant impermissibly expanded the scope of its adverse action after Plaintiff engaged in protected activity as retaliation. The Court finds there was a legally sufficient evidentiary basis for a reasonable jury to determine Defendant took an adverse action against Plaintiff by disabling his access to the entire Headquarters building for eleven months because he requested a meeting about perceived discrimination.

*Demotion after EEOC complaint*

Plaintiff filed a Charge of Discrimination with the EEOC on May 19, 2022. ECF No. 79, Trial Transcript at 105:11-16. The EEOC sent an email on June 13, 2022 to inform Defendant about Plaintiff's Charge. ECF No. 79, Trial Transcript at 98:1-12. Plaintiff was notified of his demotion on August 4, 2022. ECF No. 79, Trial Transcript at 99, Exhibit 18.

At trial, Chief Neudigate testified that he was not aware of the EEOC Charge of Discrimination until over 90 days after Plaintiff filed his Charge. ECF No. 80, Trial Transcript at 188:2-6. Defendant proffered that the email from the EEOC was addressed to a misspelled City of Virginia Beach email address and, therefore, the City never received the email and was completely unaware of the charge until after Plaintiff was demoted. However, Marjorie Smith, the City's senior attorney, testified that the City did not receive email notice of the EEOC filing, but

"sometimes [the City] get[s] [the EEOC charge notification] in a letter" rather than an email. ECF No. 81, Trial Transcript at 355:10-15.

The Court finds there was an issue of fact about whether anyone in the Department knew Plaintiff was planning to sue the Department. ECF No. 80, Trial Transcript at 214:21-215:16; 217:14-17; 218:17-25; 265-267. Additionally, there was conflicting circumstantial evidence to infer whether the EEOC would have received a "bounce back" email if it sent an email to an incorrect address and whether the EEOC may have contacted the Department about the Charge in another way, such as mailing a physical letter, which Ms. Smith established was one way the Department previously received notice of EEOC charges. Ultimately, it was a question of fact and credibility for the jury to determine whether it believed the City's testimony that it did not receive any communication or notification from the EEOC about Plaintiff's Charge for over 90 days. Given the risk that an EEOC Charge may become time-barred if abandoned, the Court finds a reasonable jury could have concluded it was more likely than not that the EEOC made successful contact with Defendant to notify it of the Charge before 90 days lapsed, that Defendant was in fact aware of the EEOC Charge, and that the August 4, 2022 demotion was a result of the protected activity.

*Additional protected activities and adverse actions establishing a pattern of conduct*

As the Court outlined in its November 24, 2024 Opinion, to satisfy the causation element of a retaliation claim, "a plaintiff may present evidence of close temporal proximity between the protected activity and the adverse employment action, or a pattern of conduct." *Webb v. K.R. Drenth Trucking, Inc.*, 780 F. Supp. 2d 409, 413 (W.D.N.C. 2011). The Court finds that, in light of the evidence presented at trial, Plaintiff provided evidence of additional protected activities and adverse employment actions that established a pattern of retaliatory conduct taken against him

when put in context.

Following Plaintiff's July 27 meeting with Chief Neudigate, Deputy Chief Wichtendahl ordered an "unprecedented quality assurance review of Plaintiff's past polygraph examinations." ECF 95 at 4; ECF 79, Trial Transcript at 81-82. Plaintiff testified that he understood the review to be for the purpose of identifying whether he had shown bias to Black employees in the past. ECF 79, Trial Transcript at 81-82. The review found this concern unsubstantiated. *Id.*

Plaintiff also filed two complaints, constituting protected activity, regarding his concern about discrimination in December 2021. Plaintiff filed a complaint with Human Resources on December 6, 2021 and he emailed Chief Neudigate on December 30, 2021 about the same concern. ECF No. 79, Trial Transcript at 91-92; ECF No. 80, Trial Transcript at 14:1-10.

On April 6, 2022, Plaintiff was notified about the administrative charges being brought against him and that he was being referred to the Brady list. ECF No. 79, Trial Transcript at 93:15-23; ECF No. 80, Trial Transcript at 186:5-15. Chief Neudigate described "[t]he Brady List [as] a list that the Commonwealth Attorney comprises of officers that have conduct in their past, typically lying, stealing, dishonesty, or really anything that impugns their integrity." ECF No. 80, Trial Transcript at 332:4-7. The Brady List assists the Commonwealth Attorney's office in confirming the office does not have a case involving an officer who will be impeached. Plaintiff was ultimately not placed on the Brady list, and Chief Neudigate testified there was "no evidence of lying, cheating, stealing or the type of things that would cause an officer to be impeached on a case in this case." ECF No. 80, Trial Transcript at 330:10-15, 334:5-8. Plaintiff argues that, in light of Chief Neudigate's testimony and the fact that Plaintiff was not placed on the Brady List, the Brady List referral "lacked merit" and animated retaliatory motivations. ECF No. 95 at 11.

A reasonable jury could have determined that, when considered as a whole, Defendant

engaged in a pattern of retaliatory conduct by repeatedly taking actions against Plaintiff as he continued to engage in protected activities. Additionally, Plaintiff's restricted access to Headquarters was sustained throughout the duration of this case. Given the prolonged and complex nature of the actions taken against Plaintiff, a reasonable jury could infer that the motivations Defendant claimed justified these actions were merely pretext and, in fact, Defendant took these adverse actions continuously over the year because Plaintiff continued to engage in protected activity.

Considering the stringent standard by which the Court must assess a Rule 50 motion, the Court concludes there was sufficient evidence adduced at trial that precludes the Court from granting judgment as a matter of law.

Motion for a New Trial

Defendant also seeks a new trial on the basis that the "late expansion of the scope of the case" constituted an "unfair surprise" and "prejudiced its defense of this claim." ECF No. 89 at 17.

Defendant correctly cites that "the decision to grant or deny a motion for a new trial is within the sound discretion of the district court." ECF No. 89 at 16 (citing *Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 358 (4th Cir. 2024)). As Defendant indicates, the Court's duty to order a new trial is triggered only if a new trial is necessary in order to prevent injustice. *Id.* (citing *Ramaco Res. LLC v. Fed. Ins. Co.*, 74 F.4th 255, 266 (4th Cir. 2023)).

The Court is not convinced its instruction that other adverse employment actions could be introduced at trial manifested injustice or prejudice to Defendant. Defendant does not identify in its motion nor in its reply what incidents were introduced during the trial that were outside the proper scope of the claim. To the extent Defendant believed Plaintiff entered evidence or elicited

testimony improperly, Defendant could have objected contemporaneously but did not. However, Defendant cannot retrospectively contest the evidence without specifying what adverse actions were impermissibly entered. Further, Defendant does not cite any case law to support its proposition.

Additionally, the pleading requirements a plaintiff must meet to overcome a motion to dismiss does not restrict him from bolstering his claim with context found while conducting discovery. If the Court were to order that, at trial, parties may only use the information to which they have access at the pleading stage, it would render discovery moot. The purpose of discovery is "to enable a party to obtain relevant information needed to prepare the party's case," acknowledging that parties often do not have access to the depth of information needed to advance their claims at the start of a case. 5 C.F.R. § 1201.71. Of course, a plaintiff may not add entirely new claims at the trial stage. However, a plaintiff may add context to an existing claim, especially in employment cases, where the Court expects most evidence to be circumstantial or inferential. A party is not "unfairly surprised" by an adverse party using information to which both parties had access through the discovery process. In the present case, Plaintiff was entitled to use information disclosed during discovery about Defendant's treatment toward him to provide the jury with context to better assess whether Defendant's asserted motive for the adverse action was legitimate and nonretaliatory or pretext. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 257 (4th Cir. 2025) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact . . . .") (internal citations omitted).

Further, as stated above, the Court finds that a reasonable jury could have come to its

9

verdict under the scope of the protected activities and adverse actions outlined in the Court's November 26, 2024 Opinion. ECF No. 16. The Court believes it would be permissible for a plaintiff to present at trial additional adverse actions he discovered during discovery to bolster the elements of his pre-existing claim. However, to the extent Defendant believes that activities or actions outside of that Opinion's scope were improperly entered into the record, the Court finds any perceived error to be harmless because, as discussed above, the jury need only have relied on the previously established activities and actions to have properly entered a verdict for Plaintiff.

Defendant also argues the jury verdict was excessive, warranting a new trial. ECF No. 89 at 17. Defendant cites *Bennett* to support its proposition. *Bennett v. Fairfax Cnty., Va.*, 432 F. Supp. 2d 596 (E.D. Va. 2006). However, *Bennett* held that, although the jury verdict of $540,000 was excessive, there was no evidence that the excessive verdict was the result of passion or prejudice by the jury. 432 F. Supp. 2d at 604 ("The Fourth Circuit has held that while a verdict may be excessive, without additional evidence of passion and prejudice by the jury, an excessive verdict alone is insufficient to require a new trial."). As in *Bennett*, the Court here finds, "with the exception of its own conclusory statements, Defendant has failed to point to any evidence showing that the jury award was the result of passion or prejudice by the jury" to warrant a new trial. *Id.*

In the alternative, Defendant requests the Court remit the jury award because it is excessive. Defendant again cites *Bennett*, which relies on similarly situated federal cases where the compensatory damages were not proportional to the actual injury incurred. *Id.* However, the amounts awarded in cases where courts remitted the judgment far exceeded the $137,000 compensatory damages award at issue here. Further, the Court finds sufficient evidence justifies the award amount in light of the derailment of Plaintiff's career and reputation after 29 years of service.

Stay of Enforcement of Judgment Pending Appeal

Defendant moves the Court to stay the enforcement of the judgment pending the resolution of "any and all appeals in this matter." ECF No. 89 at 19. Federal Rule of Civil Procedure 62 governs stays of enforcement of judgments. As Defendant correctly notes in its motion, monetary judgments are automatically stayed by payment of an appellate bond. Fed. R. Civ. P. 62(b). However, Local Civil Rule 62(A) exempts Defendant from posting the bond which would trigger the stay. As such, the Court will grant a stay of compensatory damages under Rule 62(b), to take effect should Defendant file notice of appeal.

On the issue of a stay of equitable relief under Rule 62(d), the Court finds Plaintiff's argument persuasive that Defendant is unable to make the necessary showing under the four-factor test. ECF No. 95 at 25-26. The Court is not convinced Defendant is likely to succeed on the merits on appeal, as discussed above. Further, the Court does not agree that Plaintiff will not be "substantially injured by suspending the injunction as suspension merely maintains the status quo." ECF No. 89 at 20. On the contrary, Defendant's retaliation interrupted the status quo and displaced Plaintiff from the position he should have occupied for the last three years. As a result, Plaintiff has been demoted from his proper placement for over three years and has lost out on salary, benefits, and pension.

The Court is unable predict how long Plaintiff would be forced to wait for a ruling from the Fourth Circuit to return to his job duties and, thus, is unwilling to prolong Plaintiff's demotion indefinitely. As such, Defendant's motion will be denied as to the injunctive relief restoring Plaintiff to his rank as Sergeant and negative information removed from his personnel file as well as ordering Defendant to respond neutrally to references on Banks's behalf. In the event Defendant succeeds upon appeal, the risk of irreparable injury to Defendant is low. However, the Court takes

note of Defendant's argument detailing the potential risk of returning Plaintiff to his position in Internal Affairs should Defendant succeed in an appeal. Therefore, Defendant's motion will be granted as to staying the equitable relief reinstating Plaintiff to Internal Affairs, in the event Defendant seeks appeal.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motions for judgment as a matter of law and a new trial are **DENIED** and Defendant's motion for stay of enforcement of compensatory damages pending appeal is **GRANTED**. However, Defendant's motion for stay of enforcement of the equitable relief is **GRANTED** in part and **DENIED** in part. The Order to return Plaintiff to his position in Internal Affairs is **STAYED**. But the Order to return Plaintiff to his Sergeant rank is not stayed and Defendant shall comply with the Court's Order to pay back pay and interest.

The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 25, 2025

Raymond A. Jackson
United States District Judge